1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**
9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   GERARDO ALVARADO,                        CASE NO. CV F 12-2078 LJO GSA
12                    Plaintiff,              **ORDER TO DISMISS ACTION AND TO**
                                             **DENY INJUNCTIVE RELIEF**
13        vs.                                 (Docs. 1, 2, 8.)
14   BANK OF AMERICA, N.A.,
15                    Defendant.
16   _____/
17                          **INTRODUCTION**
18        Plaintiff Gerardo Alvarado ("Mr. Alvarado") seeks to enjoin the foreclosure sale of his Modesto
19   property ("property").  This Court DENIES Mr. Alvarado's requested injunctive relief and DISMISSES
20   this action in the absence of viable claims.
21                          **BACKGROUND**
22        Mr. Alvarado signed a July 27, 2005 promissory note ("note") in the amount of $445,600 in favor
23   of Countrywide Home Loans, N.A. ("Countrywide"), which defendant Bank of America, N.A. ("B of
24   A"), has succeeded in interest by merger.  To secure the note, Mr. Alvarado signed a deed of trust
25   ("DOT") with was recorded on August 5, 2005.[1]
26        The DOT named Mortgage Electronic Registration Systems, Inc. ("MERS") as Countrywide's
27   _____
28        [1]    Documents pertaining to Mr. Alvarado's loan and property foreclosure were recorded with the Stanislaus
     County Recorder.

                              1

1   nominee beneficiary and named Recontrust Company, N.A. ("Recontrust") as trustee.

2       On August 30, 2005, Countrywide transferred its interest in the note to a mortgage backed
3   securities trust ("trust").

4       On July 12, 2012, Recontrust recorded a notice of default and election to seel under deed of trust.
5   On December 17, 2012, Recontrust recorded a notice of trustee's sale to set a January 7, 2013 trustee's
6   sale of the property.

7       On December 26, 2012, Mr. Alvarado filed his complaint ("complaint") to allege that
8   "Defendants and others alleged to have ownership, have unlawfully sold, assigned and/or transferred
9   their ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and,
10  thus, no longer have unlawful ownership or a security interest in Plaintiff's Property."  On December
11  28, 2012, Mr. Alvarado filed papers seeking to enjoin the property foreclosure sale in that:

12      1.      B of A "lacks standing to foreclose on the subject property as it is not the holder of the
13              Note securing the Property"; and

14      2.      The noted and DOT were "not properly assigned and transferred to the Trust in
15              accordance with the Pool and Servicing Agreement."

16                              **DISCUSSION**

17                              **Sua Sponte Dismissal**

18      The complaint fails to allege cognizable claims.

19      "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal
20  may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*
21  *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua
22  sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S.
23  319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,
24  745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte
25  prior to service of process on defendants).

26      "When a federal court reviews the sufficiency of a complaint, before the reception of any
27  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether
28  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

2

1  claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

2  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

3  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

4  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

5  *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

6         In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

7  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

8  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

9  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

10 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

11 *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

12 assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

13 *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can

14 prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

15 been alleged."  *Associated General Contractors of California, Inc. v. California State Council of*

16 *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if

17 "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon*

18 *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

19        A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

20 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

21 *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

22 Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

23 plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

24 *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

25 direct or inferential allegations respecting all the material elements necessary to sustain recovery under

26 some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

27 *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

28        In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

1

2

3

4

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

5     After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

6    to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

7    must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

8    F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

9     The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

10

11

12

13

14

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

15

16

17

18

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

19    *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

20     As discussed below, the complaint is subject to dismissal in the absence of claims supported by

21    a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

22                                              **Failure To Satisfy F.R.Civ.P. 8**

23     The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a

24    plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the

25    transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista*

26    *v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

27     F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement

28    "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

*McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8. The complaint lacks facts of B of A's specific wrongdoing to provide fair notice as to what B of A is to defend. The complaint lacks cognizable claims or legal theories upon which to support B of A's liability, especially considering that Countrywide, not B of A, was the original lender. The complaint lacks specific, clearly defined allegations of B of A's alleged wrongs to give fair notice of claims plainly and succinctly to warrant dismissal of this action. Morever, the complaint's claims are subject to defenses and based on legally deficient theories to further warrant dismissal.

/ / /

5

**Failure To Tender Indebtedness**

Mr. Alvarado's failure to tender, and inability to tender, the amount owing on his loan dooms his global claims.

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851

(citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant."  *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales."  *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction."  *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

1165, 246 Cal.Rptr. 421 (1988).   The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Turning to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., the "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted." *See Yamamoto*, 329 F.3d at 1172. Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172. "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173. The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

1  1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

2  given the lender's non-egregious TILA violations and equities heavily favoring the lender).[2]

3        Neither the complaint nor record references Mr. Alvarado's tender of indebtedness or meaningful

4  ability to do so.   The record's silence on Mr. Alvarado's tender of or ability to tender amounts

5  outstanding is construed as his concession of inability to do so.  Without Mr. Alvarado's meaningful

6  tender, he seeks empty remedies, not capable of being granted.  In addition, the complaint does not

7  address conditions precedent to permit rescission even under TILA.  The complaint is not a timely, valid

8  rescission notice. "Clearly it was not the intent of Congress to reduce the mortgage company to an

9  unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest."

10 *American Mortgage*, 486 F.3d at 820-821.  Without Mr. Alvarado's meaningful tender, his purported

11 claims are doomed.

### **Foreclosure Sale Presumption**

13        Based on the record, the upcoming foreclosure sale is entitled to a presumption of validity to

14 doom further Mr. Alvarado's claims.

15        Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

16 trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

17 in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of

18 trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment

19 of the loan." *Bartold v. Glendale Federal Bank*, 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).

20 A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

21 *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

22        If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

---

[2]     The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not
compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the
> borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender
> in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

 "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule, a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).  "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'"  *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).  "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity."  *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

1   To challenge foreclosure, "it is necessary for the complaint to state a case within the code

2   sections for which reason it is essential to allege the facts affecting the validity and invalidity of the

3   instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).

4   A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has

5   been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a

6   mortgage or deed of trust." *Munger v. Moore,* 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

7   The complaint lacks meaningful facts of a specific statutory irregularity or misconduct in

8   foreclosure proceedings attributable specifically to B of A.  Mr. Alvarado's conclusory claims of non-

9   compliance of non-judicial foreclosure provisions offer nothing to support a discrepancy in the

10   foreclosure process. The complaint lacks allegations to overcome the presumption of foreclosure

11   validity.

12   **Standing To Foreclose**

13   *Securitization*

14   Mr. Alvarado's papers appear to challenge foreclosure given securitization of the note.  Mr.

15   Alvarado offers no meaningful support that the handling of the note or DOT thwarted the DOT's power

16   of sale.

17   The "request for declaratory relief is based on the erroneous theory that all defendants lost their

18   power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust

19   pool. This argument is both unsupported and incorrect." *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652

20   F.Supp.2d 1039, 1043 (N.D. Cal. 2009).  "[C]ourts have uniformly rejected that securitization of a

21   mortgage loan provides the mortgagor a cause of action." *Velez v. The Bank Of New York Mellon*, 2011

22   WL 572523, at *4 (D. Hi. 2011) ("The court also rejects Plaintiff's contention that securitization in

23   general somehow gives rise to a cause of action – Plaintiff points to no law or provision in the mortgage

24   preventing this practice, and otherwise cites no law supporting that securitization can be the basis of

25   a cause of action."

26   Securitization of Mr. Alvarado's note does not diminish the underlying power of sale upon Mr.

27   Alvarado's default.  Mr. Alvarado's securitization claims fail to support a necessary irregularity to

28   challenge foreclosure of the property.

1

*Note Possession*

2

In addition, foreclosure is not dependent on possession of Mr. Alvarado's original note.

3

"Under California law, there is no requirement for the production of an original promissory note

4

prior to initiation of a nonjudicial foreclosure. . . . Therefore, the absence of an original promissory note

5

in a nonjudicial foreclosure does not render a foreclosure invalid." *Pantoja v. Countrywide Home*

6

*Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009). "Pursuant to section 2924(a)(1) of the

7

California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process.

8

Production of the original note is not required to proceed with a non-judicial foreclosure." *Hafiz*, 652

9

F.Supp.2d at 1043 (citation omitted).

10

"Under Civil Code section 2924, no party needs to physically possess the promissory note."

11

*Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

12

2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

13

election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. "The trustee has

14

the power and the duty to initiate foreclosure proceedings on the property upon the trustor's default,

15

resulting in a sale of the property." *Hafiz*, 652 F.Supp.2d at 1043 (citation omitted). An "allegation that

16

the trustee did not have the original note or had not received it is insufficient to render the foreclosure

17

proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

18

Inclusion of Mr. Alvarado's note in an investor pool did not preclude foreclosure. Mr.

19

Alvarado's points as to inability to foreclose are unavailing given the absence of need to produce his

20

original note. The clear authority is that production of original promissory notes is unnecessary to

21

initiate foreclosure. Claims of pooling and service agreement ("PSA") violations are insufficient given

22

that Mr. Alvarado is not a PSA party and lacks grounds to enforce PSA provisions.

23

*MERS Authority*

24

Mr. Alvarado's challenges to MERS' authority are unavailing, especially given the absence of

25

facts to support Mr. Alavarado's prejudice from foreclosure irregularities.

26

The California Court of Appeal has explained that prejudice is required for a wrongful

27

foreclosure claim:

28

We also note a plaintiff in a suit for wrongful foreclosure has generally been required to

13

demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. . . . If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011); *see Knapp v. Doherty*, 123 Cal.App.4th 76, 86, n. 4, 20 Cal.Rptr.3d 1 (2004) ("A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure and the resulting prejudice.'"); *Angell v. Superior Court,* 73 Cal.App.4th 691, 700, 86 Cal.Rptr.2d 657 (1999) (failure to comply with procedural requirements must cause prejudice to plaintiff).

Prejudice is not presumed from "mere irregularities" in the process. *Meux v. Trezevant*, 132 Cal. 487, 490, 64 P. 848 (1901).

Mr. Alvarado's papers lack allegations of requisite prejudice to Mr. Alvarado in connection with foreclosure, especially given his inability to tender amounts owed on his loans or to cure his default. The record lacks a defect as to MERS to disrupt foreclosure.

## **Absence Of Actionable Duties**

Nothing in the record reflects that B of A is subject to Mr. Alvarado's claims.

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991); *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no lender liability when lender did not engage "in any

14

1    activity outside the scope of the normal activities of a lender of construction monies").

2          "Public policy does not impose upon the Bank absolute liability for the hardships which may

3    befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.   The success of

4    a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to

5    protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

6    information it may have had").

7          The record lacks facts to support an actionable duty to impose on B of A.   "No such duty exists"

8    for a lender "to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine

9    the creditworthiness and ability to repay by a borrower are for the lender's protection, not the

10   borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had

11   to rely on their own judgment and risk assessment to determine whether or not to accept the loan").   The

12   record lacks facts of special circumstances to impose duties on B of A in that the record depicts an arms-

13   length loan transaction, nothing more.   The record fails to substantiate a special lending relationship or

14   an actionable breach of duty to substantiate a claim against B of A.

15         Moreover, the "relationship between a lending institution and its borrower-client is not fiduciary

16   in nature." *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo*

17   *Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).   A commercial lender is entitled to

18   pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283

19   Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

20   Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary

21   relationship between the borrower and lender."   *Oaks Management*, 145 Cal.App.4th at 466, 51

22   Cal.Rptr.3d 561 ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys,* 102 Cal.App.2d

23   323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between

24   debtor and creditor as such.").          Mr. Alvarado fails to demonstrate grounds to impose liability on

25   B of A.

26                              **Attempt At Amendment And Malice**

27         Since the complaint's claims are insufficiently pled and barred as a matter of law, Mr. Alvarado

28   is unable to cure claims by allegation of other facts and thus is not granted an attempt to amend.   Mr.

Alvarado's papers raise frivolous points which this Court need not address individually. *See Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.")

Moreover, this Court surmises that Mr. Alvarado brought this action in absence of good faith and seeks to exploit the court system solely for delay or to vex B of A and the foreclosure and/or unlawful detainer process. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action.

### Injunctive Relief

Mr. Alvarado seeks to enjoin property foreclosure.

F.R.Civ.P. 65(b)(1)(A) permits a temporary restraining order ("TRO") "only if" "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008). To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest. *Winter*, 129 U.S. at 374. In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009). Preliminary injunctive relief

16

1  "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

2  showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865

3  (1997) (citation omitted).

4        Mr. Alvarado's papers lack "specific facts in an affidavit or a verified complaint" to show clearly

5  the need for injunctive relief.

6                          **Likelihood Of Success On Merits**

7        Pursuant to *Winter*, plaintiffs must make a "clear showing" that they are "likely to succeed on

8  the merits." *Winter*, 129 S.Ct. at 375-376; *Stormans*, 571 F.3d at 978.  With dismissal of his claims, Mr.

9  Alvarado is unable to show success on the merits.

10                      **Irreparable Injury Absent Injunctive Relief**

11       "Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury

12  is *likely* in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009)

13  (quoting *Winter*, 129 S.Ct. at 375) (noting that the Supreme Court in *Winter* rejected the Ninth Circuit's

14  "possibility of irreparable harm" test).  "Typically, monetary harm does not constitute irreparable harm."

15  *Cal Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009).  "Economic damages are

16  not traditionally considered irreparable because the injury *can later be remedied by a damage award*."

17  *Cal Pharmacists,* 563 F.3d at 852 (italics in original).  However, "intangible injuries, such as damage

18  to . . . goodwill qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance*

19  *Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1001).

20       Mr. Alvarado fails to establish that he is entitled to prevent property foreclosure, especially with

21  no record of his ability to tender outstanding amounts owed.  Under the circumstances, loss of the

22  property is not irreparable injury.  Delaying foreclosure could cause irreparable harm to B of A's

23  interests.

24                              **Balance Of Equities**

25       The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities

26  so heavily favors the moving party that justice requires the court to intervene to secure the positions until

27  the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395

28  (1981).

1   Mr. Alvarado fails to demonstrate that the balance of equities merits his requested injunctive

2   relief.  In fact, the balance of equities weighs in B of A's favor as the record suggests that Mr. Alvarado

3   may remain on the property improperly without payment of outstanding amounts owed.

4   **Public Interest**

5   "In exercising their sound discretion, courts of equity should pay particular regard for the public

6   consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-77

7   (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  "The public interest analysis for

8   the issuance of a preliminary injunction requires [the Court] to consider whether there exists some

9   critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So.*

10  *Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009).

11  No meaningful public interest supports injunctive relief.  Granting injunctive relief would be a

12  disservice to public interest by allowing Mr. Alvarado to preclude foreclosure after his default and

13  without tender of outstanding amounts owed.

14  **CONCLUSION AND ORDER**

15  This Court is familiar with Mr. Alvarado's purported claims which many prior defaulted

16  borrowers have pursued unsuccessfully.  Neither Mr. Alvarado nor the record offers anything to suggest

17  a fair chance of success on the merits or irreparable harm given Mr. Alvarado's default, inability to

18  tender and dismissal of claims. This Court considers Mr. Alvarado's injunctive relief request as a further

19  tactic to attempt to delay foreclosure proceedings.  Dismissal of this action removes doubt as to probable

20  success of Mr. Alvardo's claims or irreparable harm to her.

21  For the reasons discussed above, this Court:

22  1.   DISMISSES with prejudice this action;

23  2.   DENIES Mr. Alvarado requested injunctive relief; and

24  3.   DIRECTS the clerk to enter judgment against plaintiff Gerardo Alvarado and in favor

25       of defendant Bank of America, N.A. and to close this action.

26  IT IS SO ORDERED.

27  Dated:   **January 2, 2013**          **/s/  Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE

28

18